# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------------- x

In re:

W. R. GRACE & CO., *et al.*,

                           Debtors.

W. R. GRACE & CO. *et al.*,

                           Plaintiffs,

              vs.

MARGARET CHAKARIAN, ROBERT H. LOCKE,
JACKIE ELLISON, MARCIA ELLISON, CARY
YOUPEE, RUPPLE K. PERRY, THE STATE OF
MICHIGAN, ALICE SMOLKER, GARY SMOLKER,
HOME SAVING TERMITE CONTROL, GLORIA
MUNOZ, EXXONMOBIL CORPORATION, *et al*, and
JOHN DOES 1-1000,

                           Defendants.

----------------------------------------------------------------- x

)
)
)   Chapter 11
)
)   Case No. 01-01139 (JJF)
)   (Jointly Administered)
)
)
)   <u>Adversary No. A-01-771</u>
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## MEMORANDUM OF LAW OF DEFENDANT EXXONMOBIL
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Dated: September 20, 2001

GREENBERG TRAURIG, LLP
Scott D. Cousins (No. 3079)
William E. Chipman Jr. (No. 3818)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, Delaware 19801
(302) 661-7000

GREENBERG TRAURIG, LLP
Adam D. Cole
885 Third Avenue
New York, New York 10022
(212) 801-2100

Attorneys for ExxonMobil Corporation

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................2

THE UNCONTESTED FACTS .........................................................................3

    Background .................................................................................................3

    Exxon Acquires Rights to Cushing Field..................................................4

    GPC Is Sold to Samson .............................................................................4

    The Landowner Claims ..............................................................................5

    The Oklahoma Action ................................................................................5

    The Debtors' Case......................................................................................6

ARGUMENT ....................................................................................................7

  I.   THE LAW PROHIBITS EXTENDING THE AUTOMATIC STAY
       TO THE OKLAHOMA ACTION...............................................................7

      A.   Samson Is Independently Liable To Exxon..............................7

      B.   The Debtors' Indemnity Obligations Are Not Absolute.......... 11

  II.  EXTENDING THE STAY UNDER 11 U.S.C. § 105 OR THE
      ALL WRITS ACT IS UNWARRANTED .....................................................13

CONCLUSION.................................................................................................15

i

# TABLE OF AUTHORITIES

**Federal Cases**

*Aetna Casualty & Surety Co. v. Namrod Development Corp.*, 140 B.R. 56,
(S.D.N.Y. 1992) ..................................................................................................... 10, 13

*Algamene Bank Nederland N.V. v. Hallwood Industries, Inc.*, 133 B.R. 176,
(W.D. Pa. 1991) ......................................................................................................... 9, 11

*All Seasons Resorts, Inc. v. Milner (In re All Seasons Resorts, Inc.)*,
79 B.R. 901, (Bankr. C.D. Cal. 1987) ...................................................................... 14

*Avellino & Brenes v. M. Frenville Co., (In re Frenville)*, 744 F.2d 332,
(3d Cir. 1984) ............................................................................................................. 8

*Credit Alliance Corp. v. Williams*, 851 F.2d 119, (4th Cir. 1988) .............................. 9

*Holland v. High Power Energy*, 248 B.R. 53, (S.D.W.Va. 2000) .......................... 9, 10

*In re American Film Technologies, Inc.*, 175 B.R. 847,
(Bankr. D. Del. 1994) ............................................................................................... 13

*In re Babcock & Wilcox Co.*, No. CIV. A. 00-3408, 00-3409, 00-10992, 00-1051,
2001 WL536305 at * 4 (E.D. La. 2001) .................................................................. 13

*In re General Motors Pick-up Truck Fuel Tank Products Liability Litigation*,
134 F.3d 133, (3d Cir. 1998) ...................................................................................... 15

*Maritime Co. v. United Jersey Bank*, 959 F.2d 1194, (3d Cir. 1991) ........................... 8

*McCartney v. Integra National Bank North*, 106 F.3d 506, (3d Cir. 1997) ........ 8, 9, 11

*Oberg v. Aetna Casualty & Surety Co.*, 828 F.2d 1023, (4th Cir. 1987) ................... 14

*O'Malley Lumber Co. v. Lockard (In re Lockard)*, 884 F.2d 1171, (9th Cir. 1989) ........ 9

*Piccinin*, 788 F.2d 994, (4th Cir. 1986) ........................................................... 9, 12, 14

*Washburn & Kemp*, 846 F.2d 267 (4th Cir. 1988) ...................................................... 10

**Federal Statutes**

11 U.S.C. § 105 ............................................................................................................. 14

11 U.S.C. § 362(a)(1) ..................................................................................................... 8

11 U.S.C. § 502(e) ......................................................................................................... 13

28 U.S.C. § 2283 ........................................................................................................... 15

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------------- x
                                                                )
In re:                                                          )
                                                                )  Chapter 11
W. R. GRACE & CO., *et al.*,                                    )
                                                                )  Case No. 01-01139 (JJF)
                                      Debtors.                  )  (Jointly Administered)
                                                                )
W. R. GRACE & CO. *et al.*,                                     )
                                                                )  Adversary No. A-01-771
                                     Plaintiffs,                )
                                                                )
                                                                )
                    vs.                                         )
                                                                )
MARGARET CHAKARIAN, ROBERT H. LOCKE,                            )
JACKIE ELLISON, MARCIA ELLISON, CARY                            )
YOUPEE, RUPPLE K. PERRY, THE STATE OF                           )
MICHIGAN, ALICE SMOLKER, GARY SMOLKER,                          )
HOME SAVING TERMITE CONTROL, GLORIA                             )
MUNOZ, EXXONMOBIL CORPORATION, *et al*, and                     )
JOHN DOES 1-1000,                                               )
                                                                )
                                      Defendants.               )
                                                                )
--------------------------------------------------------------- x

**MEMORANDUM OF LAW OF DEFENDANT EXXONMOBIL
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant ExxonMobil Corporation ("Exxon") respectfully submits this memorandum of law in support of its motion, pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for summary judgment dismissing the claims asserted against Exxon in their entirety.

# PRELIMINARY STATEMENT

W. R. Grace & Co., *et al*, debtors and debtors-in-possession (the "Debtors") commenced this adversary proceeding in an attempt to extend the automatic stay to third-party actions, many of which involve neither the Debtors nor the property of their estates. Most of the third-party actions sought to be stayed involve asbestos claims asserted against the Debtors or their officers and directors that were the stated cause of the Debtors' bankruptcy petition. The present motion is not directed to the asbestos claims or to any action in which the Debtors are involved or in which their assets are at risk. Rather, attached to the Debtors' omnibus complaint is a request to enjoin an Oklahoma state court action between Exxon and non-debtor, non-affiliate Samson Hydrocarbons Company ("Samson") concerning a contract to which the Debtors are not parties (*Exxon Corp. v. Samson Hydrocarbons Co.*, No. CJ-99-390 (Creek County, Oklahoma)) (the "Oklahoma Action").

Exxon commenced the Oklahoma Action against Samson in 1997 seeking indemnity and contribution for costs incurred by Exxon in connection with claims made by certain landowners against Exxon regarding alleged ground and water contamination. The alleged contamination was related to oil and gas production on property known as "Cushing Field." Exxon's claim against Samson in the Oklahoma Action is primarily based upon an indemnity provision in the agreement under which Exxon acquired its rights to produce oil and gas at Cushing Field.

After four years of litigation, discovery, and motion practice, the Oklahoma Action is set for trial in February 2002. Despite not being parties to the Oklahoma Action, and despite their assets and reorganization not being at risk in the Oklahoma Action, the Debtors

contend they are entitled to stay the Oklahoma Action. The Debtors argue they agreed to indemnify Samson for certain claims arising out of Cushing Field, and that therefore there is a chance the Oklahoma Action may ultimately give rise to a general unsecured claim by Samson in the Debtors' bankruptcy case.

Regardless of whether the Debtors' concerns are correct, their concerns do not provide a basis for this Court to exercise extraordinary injunctive power unauthorized by the Bankruptcy Code. As demonstrated below, the Bankruptcy Code limits the scope of the automatic stay to the Debtors and its property and does not extend to non-debtors and their property. Only in certain rare and "unusual circumstances" has the scope of the stay been extended to non-debtors where the debtor is the real party defendant and will be unconditionally bound by the outcome of the third-party action. The Oklahoma Action does not even approach the "unusual circumstances" required for this Court to exercise extraordinary injunctive powers.

For these reasons, and as demonstrated below, the Amended Complaint fails to assert a valid claim for relief at against Exxon and should be dismissed.

## THE UNCONTESTED FACTS

### Background

Cushing Field is an oil and gas field located in Creek County, Oklahoma. Since 1912, when Cushing Field was discovered, a series of petroleum companies have drilled and produced oil and gas from the field. One such company was Grace Petroleum Company ("GPC"), which produced oil and gas at Cushing Field under certain property rights from 1979

through 1985. (Adams Decl. ¶ 6.)[1] Until 1992 (as detailed below), GPC was a wholly owned subsidiary of Debtor Grace Energy Company ("GEC"). (*Id.*)

## Exxon Acquires Rights to Cushing Field

By Agreement to Purchase and Sell effective as of January 1, 1985 (the "Cushing Field Purchase and Sell Agreement"), Exxon acquired the exploration rights to Cushing Field from GPC. (Adams Decl. Exh. A.) Under the Cushing Field Purchase and Sell Agreement, GPC agreed to a broad indemnity provision to protect Exxon from damages relating to GPC's operations at Cushing Field. Paragraph 9.04(a) of the Cushing Field Purchase and Sell Agreement, in pertinent part, provides that "[GPC] shall indemnify, save harmless, and defend buyer against any and all actions, causes of action, proceedings, damages, costs or expenses . . .which arise out of, relate to, or result from, the ownership or operation of the Assets by the Seller prior to the Closing Date. . . ." (*Id.* Exh. A.) Exxon thereafter operated the Cushing Field through 1997.

## GPC Is Sold to Samson

On December 30, 1992, Debtor GEC sold GPC to Samson. Pursuant to the "GPC Stock Purchase Agreement" under which Samson purchased GPC, GEC agreed to indemnify Samson for, among other things, damages caused by

> the environmental condition of any oil, gas and mineral leases and any other properties, including but not limited to, gas plants and treatment facilities in which [GPC] previously owned an interest but in which [GPC] no longer own[s] an interest as of the Closing Date.

---

[1] The Declaration of Steven J. Adams in Support of Motion for Summary Judgment dated September 18, 2001, and filed contemporaneously herewith, is referred to herein as the "Adams Decl."

(The "GEC Indemnity"). (Adams Decl. Exh. B ¶ 13.03.)  The GEC Indemnity, however, was subject to a number of conditions and limitations.  In particular, the indemnity is limited to claims in excess of $25,000, and only where aggregate claims exceed $250,000.  (Adams Decl. Exh. B ¶ 13.04(a).)

## The Landowner Claims

Beginning in or about 1990, several landowners near Cushing Field notified Exxon of their claims of alleged groundwater contamination and surface damage relating to oil and gas operations at Cushing Field (the "Landowner Claims"). (Adams Decl. ¶ 9.)  One such claim resulted in an action against Exxon in the District Court of Creek County, Oklahoma, *Ella Glimp v. Exxon Company, U.S.A., et al.*, Case No. C-92-449.  By 1997, Exxon settled the Landowner Claims, the settlement costs of which were approximately:

| | | |
|---|---|---|
| 1. | *Glimp v. Exxon* | $1,468,000 |
| 2. | Martia Jackson and Kay Jones | 22,500 |
| 3. | S.G. and Betty Jo Reiley | 35,000 |
| 4. | Dan and Geraldine Simonton | 97,600 |
| 5. | W.D. Carroll and Margorie Carroll | 120,000 |
| 6. | Allen and Rita Baugh | 75,000 |

(Adams Decl. ¶ 10.)

## The Oklahoma Action

After settlement of the Landowner Claims and based upon the indemnity provision in the Cushing Field Purchase and Sell Agreement, Exxon requested indemnity from Samson for amounts expended in connection with the settlements.  After all requests were rejected, in June 1997, Exxon commenced an action in District Court, Creek County, Oklahoma,

against Samson for indemnity and contribution (the "Oklahoma Action"). (Adams Decl. Exh. C.)[2]  The Debtors are not parties to the Oklahoma Action, and Exxon has not asserted a claim against the Debtors related to settlement of the Landowner Claims in the Debtors' bankruptcy.  In the Oklahoma Action, Exxon seeks to enforce indemnity rights against Samson alone, under the Cushing Field Purchase and Sell Agreement.

In response to Exxon's complaint, Samson asserted essentially two defenses. Samson asserted that Exxon was in whole or in part the cause of the alleged contamination at Cushing Field. (Adams Decl. Exh. D ¶ 7.)  Samson also contends that Exxon has an indemnity obligation to Samson. (*Id.* Exh. D ¶ 4.)  Except for expert disclosures, discovery is completed in the Oklahoma Action, and the trial is scheduled to commence in February 2002. (*Id.* ¶¶ 13-14.)

**The Debtors' Case**

Due to a "dramatic influx" and "increase" in direct claims against the Debtors relating to asbestos exposure, the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. (Complaint ¶ 38.)

By Amended Complaint for Declaratory and Injunctive Relief dated June 21, 2001, the Debtors commenced the present action to enjoin a series of asbestos-related actions against the Debtors, their affiliates, and their officers and directors.  In addition, the Amended Complaint seeks to enjoin certain non-asbestos cases, including the Oklahoma Action.  The Debtors contend they are entitled to enjoin the Oklahoma Action because they "assumed the defense" of Samson in that action and are required to indemnify Samson for any liability it may

---

[2] An amended petition was filed against Samson in May 1999. (*Id.* Exh. C.)

incur as a result of such actions. (Amended Complaint ¶ 45.) For the reasons set forth below, the Debtors' "claim" against Exxon is invalid as a matter of law and should be rejected.

## ARGUMENT

## I. THE LAW PROHIBITS EXTENDING THE AUTOMATIC STAY TO THE OKLAHOMA ACTION

### A. Samson Is Independently Liable To Exxon

Although unclear from the Amended Complaint, the Debtors appear to rely upon section 362(a) of the Bankruptcy Code as the statutory basis for their claim that the Oklahoma Action should be enjoined. Section 362(a), in pertinent part, provides that the filing of a bankruptcy petition "operates as a stay" of judicial action *"against the debtor."* 11 U.S.C. § 362(a)(1) (emphasis added). By enacting an automatic stay provision, Congress intended to permit the debtor a "fresh start, free from immediate financial pressures that caused the debtor to go into bankruptcy." *Avellino & Brenes v. M. Frenville Co.*, (*In re Frenville*), 744 F.2d 332, 334 (3d Cir. 1984). Accordingly, the stated purpose and "clear language of section 362(a) indicates that it stays only proceedings against the 'debtor'—the term used by the statute itself." *Maritime Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991); *accord McCartney v. Integra National Bank North*, 106 F.3d 506, 509 (3d Cir. 1997) ("Although the scope of the automatic stay is broad, the clear language of section 362(a) stays actions only against a 'debtor'").

Despite the express limitations of section 362(a), the Debtors seek to extend the automatic stay to preclude the Oklahoma Action—an action between two non-debtors not involving property of the estate. The Debtors contend that the automatic stay should be extended because, pursuant to the Stock Purchase Agreement, the Debtors agreed to assume the defense of Samson in the Oklahoma Action and to indemnify Samson for claims in excess of $25,000.

7

(Amended Complaint ¶ 45; *see* Adams Decl. Exh. B ¶ 13.04(a).)  The Debtors are incorrect as a matter of law.

Given the limited scope of the automatic stay set forth in section 362(a), courts have hesitated to extend their own extraordinary injunctive powers to non-debtors except under the most extreme and "unusual circumstances." *McCartney*, 106 F.3d at 510; *Credit Alliance Corp. v. Williams*, 851 F.2d 119, 121 (4th Cir. 1988); *Algamene Bank Nederland N.V. v. Hallwood Industries, Inc.*, 133 B.R. 176, 179 (W.D. Pa. 1991).  "Unusual circumstances" may arise where the debtor first establishes "'there is such an identity between the debtor and the [non-debtor] third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" *McCartney*, 106 F.3d at 510; *quoting, A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986).[3]  No such identity exists when the non-debtor third party is "independently liable," that is, when the non-debtor third party "has obligations that are 'independent' and primary, not derivative of those of the debtor." *Holland v. High Power Energy*, 248 B.R. 53, 58 (S.D.W.Va. 2000), *quoting, O'Malley Lumber Co. v. Lockard (In re Lockard)*, 884 F.2d 1171, 1179 (9th Cir. 1989); *accord A.H. Robins*, 788 F.2d at 999 (unusual circumstances exception inapplicable "[w]here the third-party defendant was independently liable as, for example, where the debtor and another are joint tortfeasors or where the non-debtor's liability rests upon his own breach of duty") (citations omitted).

---

[3] The "unusual circumstances" exception was initially articulated by the Fourth Circuit in *A.H. Robins*. *See Washburn & Kemp v. Committee of Dalkon Shield Claimants (In re A.H. Robins)*, 846 F.2d 267 (4th Cir. 1988).  A prerequisite for applying the unusual circumstances exception is that "[t]he interests of the co-defendants were so intertwined with those of the debtor that, as we said, the suits could in fact be regarded actually as a suit or claim against the debtor itself." *Id.* at 270.

8

For example, the court in *Washburn & Kemp* rejected extension of the automatic stay where, as here, the third-party action concerned a contractual obligation to which the debtor was not a party. 846 F.2d 267. There, the debtor's products liability insurer retained a law firm to defend a pre-petition action against the debtor. *Id.* at 268. Under the insurance contract between the insurer and the debtor, the insurer was permitted to charge back costs of litigation—including those under the contract between the insurer and the law firm—to the debtor. *Id.*

The Fourth Circuit refused to extend the stay to prevent the law firm from collecting its fees from the insurer under the separate retention agreement. As the court explained, the "claim of [the law firm] against [the insurer] is based . . . on a contract between [the insurer] and [the law firm], to which [the debtor] was not bound." *Id.* at 271. Whether the insurer was entitled to enforce its absolute reimbursement rights against the debtor after paying the law firm under its separate contractual obligation was "a question to be resolved later in the bankruptcy court in the reorganization proceeding of [the debtor]."[4] Stated simply, the law firm's dispute with the insurer was "manifestly a claim different" from instances where the third-party defendant's interests are "intertwined with those of the debtor." *Id* at 270-71; *accord Holland*, 248 B.R. at 59 ("Notwithstanding the indemnity agreement between the parties, it cannot be said that the interests of [the non-debtors] and [the debtors] are closely intertwined in the sense contemplated by the *Robins* court merely by virtue of that agreement" where liability was independent); *Aetna Casualty & Surety Co. v. Namrod Development Corp.*, 140 B.R. 56, 60

---

[4] Indeed, as the court further explained, "[t]he right of offset in favor of [the insurer] against any claim of [the debtor] would be a matter of construing the contract between [the insurer] and [the debtor] (with which [the law firm] was not concerned) and what status, if any, the claim of offset by [the insurer] (if allowable under the contract between [the insurer] and [the debtor]) would occupy in the reorganization would be a question to be resolved in the bankruptcy proceedings." *Washburn & Kemp*, 846 F.2d at 271 n.2.

(S.D.N.Y. 1992) (debtor's indemnity obligations not sufficient basis for extending the automatic stay where non-debtor was "independently liable" to the non-debtor plaintiff); *Algamene Bank Nederland, N.V. v. Hallwood Industries, Inc.*, 133 B.R. 176, 180 (W.D. Pa. 1991) ("the debtor and the non-bankrupt defendant are not 'closely related' in the sense contemplated by the circuits extending the stay provisions to non-bankrupt defendants, merely by virtue of the indemnification agreement between [the debtor] and [the non-debtor defendant]").

In contrast, the *McCartney* court approved the extension of the automatic stay to a third-party action where the action required the debtor's "necessary participation" and any judgment entered in that action "would have operated as a judgment or finding against" the debtor. 106 F.3d at 511. There, the debtor was the guarantor of a loan, would have been required to be joined in any deficiency action, and would have been automatically liable to satisfy to the plaintiff-lender any deficiency judgment claim asserted against the non-debtor borrower. *Id.* Given the debtors' "necessary participation" and its automatic liability for a deficiency judgment, the court concluded that an extension of the stay was warranted; the debtor "would have been the real party defendant in a deficiency judgment action by [the lender] against [the borrower]."

Here, as in *Washburn & Kemp*, Samson's liability to Exxon arises out of a separate and distinct contractual obligation to which the Debtors are not parties. Exxon seeks indemnity from Samson under their separate purchase and sell agreement for amounts Exxon paid in connection with the Landowner Claims. ( Adams Decl. Exh. "A.") Under that separate agreement, GPC, now owned by Samson—not the Debtors—agreed to indemnify Exxon for damages incurred due to environmental liability related to Cushing Field. (*Id.*) Such agreement

is distinct from the agreement under which the Debtor's conditionally agreed to indemnify Samson for certain liabilities, and whether or not the Debtor's may ultimately indemnify Samson for Exxon's claims against Samson, is a matter strictly between Samson and the Debtors. Samson's liability under its agreement with Exxon is therefore "independent" of any potential claim Samson may have against the Debtors under the separate GPC Stock Purchase Agreement.

In short, because Samson's obligations to Exxon are independent of the general unsecured obligations the Debtors may ultimately owe Samson in the Debtors' bankruptcy, extension of the automatic stay to the Oklahoma Action would be contrary to the law. Indeed, Samson's obligations are independent, and therefore there is no risk that a judgment in the Oklahoma Action would operate as a judgment or finding against the Debtors directly, or indirectly through the doctrines of collateral estoppel or *res judicata*.

For these reasons alone, the Debtors' request to extend the automatic stay to the Oklahoma Action should be denied and its adversary proceeding against Exxon dismissed.

**B.     The Debtors' Indemnity Obligations Are Not Absolute**

Even assuming Samson's and the Debtors' interests could be viewed as "intertwined"—which they cannot—extending the automatic stay to the Oklahoma Action would be inappropriate because the Debtors' indemnity obligations to Samson are not absolute. Courts that have recognized the limited "unusual circumstances" exception in the context of indemnity obligations have made it clear that the debtor's indemnity obligations must be "absolute" before the stay may be extended to third parties. *See, e.g., A.H. Robins*, 788 F.2d at 999 ("unusual circumstances" may arise where a third party "is entitled to *absolute indemnity* by the debtor on account of any judgment that might arise against *them* in the case") (emphasis added). In other

words, before the automatic stay may be extended, the Debtors' indemnity obligations to the non-debtors must be "unconditional." In re Babcock & Wilcox Co., No. CIV. A. 00-3408, 00-3409, 00-10992, 00-1051, 2001 WL536305 at * 4 (E.D. La. 2001).[5]

Here, the Debtors' obligation to indemnify Samson is not "unconditional." In the first instance, the Debtors are only required to indemnify Samson for claims in excess of $25,000. (Adams Decl. Exh. B ¶ 13.04(a).) At least one of the Landowner Claims settlements for which Exxon seeks indemnity from Samson is less than $25,000. (Adams Decl. ¶ 10.) Furthermore, given Samson's defense in the Oklahoma Action that Exxon was the cause of the contamination at Cushing Field, it is unsettled whether the Debtors' indemnity obligations would even be triggered. (Adams Decl. Exh. D.)

Furthermore, if, as the Debtors must argue, a judgment in the Oklahoma Action would likely bind the Debtors, then Samson is "liable with the debtor" 11 U.S.C. § 502(e). Even under such a scenario, Samson is the party that would be directly and primarily liable to Exxon under the Cushing Purchase and Sell Agreement. Samson would be liable to Exxon whether or not the Debtors were to fulfill their indemnity obligations to Samson. Any indemnity obligation

---

[5] The indemnity between the Debtors and Samson is different from the absolute indemnity obligations a corporation owes to its officers and directors. In the corporate officer context, the officers are being indemnified for actions taken on behalf of the corporation. Accordingly, not only is the corporate indemnity obligation absolute, but any ruling against the corporate officers would necessarily be a ruling against the corporation given the close privity relationship between officers and the corporation, and given the *respondent superior* obligations of the corporation. *Compare In re American Film Technologies, Inc.,* 175 B.R. 847, 849 (Bankr. D. Del. 1994) (extending stay appropriate where "identity of subject matter, issues and parties involved, the California case squarely implicates [the debtor's] indemnity obligation and exposes it to collateral estoppel prejudice if it does not participate in that case") *with Namrod,* 140 B.R. at 60 (extending stay inappropriate where board members were "independently liable to plaintiff . . . separate from any claims that plaintiff may have against [the debtor]").

of the Debtors is required to be adjusted under, and is subject to, the restrictions on allowed indemnity claims set forth in section 502(e) of the Bankruptcy Code. As one court declared in rejecting the debtor's motion to extend the automatic stay to claims against officer and directors, "they, in turn, can seek indemnification from debtor, but their claim will be treated like any pre-petition, unsecured claim. In all likelihood, they will not get paid in full." *All Seasons Resorts, Inc. v. Milner (In re All Seasons Resorts, Inc.)*, 79 B.R. 901, 904 (Bankr. C.D. Cal. 1987).

In sum, because the Debtors' indemnity obligations to Samson are not "absolute" both as a matter of contract and law, the Debtors' requested relief should be rejected on this separate ground.

## II. EXTENDING THE STAY UNDER 11 U.S.C. § 105 OR THE ALL WRITS ACT IS UNWARRANTED

The Debtors also point to section 105 of the Bankruptcy Code and the All Writs Act as bases for this Court's exercising injunctive power over a state court action between two non-debtors. The Debtors' reliance is misplaced.

Section 105(a) empowers the court to "issue any order, process, or judgment that is necessary or appropriate to any of the provisions of this title." In the context of enjoining actions between non-debtors, the scope of section 105(a) has been restricted to its purpose; where the third-party action would interfere with a debtors' rehabilitative process, such as where there is a crush of litigation, or where the debtors or the debtors' control officers and directors would be distracted by the third-party action. *See, e.g., A.H. Robins*, 788 F.2d at 1006 (staying actions against insurer against crush of Dalkon Shield claims to a policy that was property of the estate); *Oberg v. Aetna Casualty & Surety Co.*, 828 F.2d 1023, 1026 (4th Cir. 1987) (issuing stay

because burden on officers and directors "put a substantial burden on Robins . . . and would detract from the reorganization process").

Here, there is no risk that continuing the Oklahoma Action to trial will have an impact on the Debtors' reorganization process. The Oklahoma Action concerns Samson's indemnity obligations to Exxon, it does not involve property of the Debtors' estate. (Adams Decl. Exh. C.) Furthermore, the only potential witness related to the Debtors is Anthony Riddlesperger, Vice President and Chief Counsel of GEC. (Adams Decl. ¶ 13.) There is no indication that his being a potential witness in the Oklahoma Action will in any way hamper the Debtors' reorganization efforts. Finally, the worst that can happen to the Debtors from completion of the Oklahoma Action is that Samson may file a general unsecured claim for indemnity subject to the restrictions of section 502. No reasonable argument can be made that a potential $1.8-million unsecured proof of claim will block the Debtors' reorganization efforts, particularly given the Debtors' billions in revenue and its "real" threat of the crushing weight of asbestos claims. (Amended Complaint ¶ 11.)

Nor is there any basis for this Court's exercise of injunctive power under the All Writs Act. Indeed, under section 2283 of the Judicial Code (the Anti-Injunction Act) this Court is expressly prohibited from enjoining or staying actions pending in state court. 28 U.S.C. § 2283. The only exceptions are where an injunction is necessary to "aid" the court's jurisdiction or to protect or effectuate its judgments. *Id.*; *In re General Motors Pick-up Truck Fuel Tank Products Liability Litigation*, 134 F.3d 133, 148 (3d Cir. 1998). Here, there is no issue of this Court's jurisdiction, and there has been no judgment in this case that this Court can

seek to protect. Accordingly, the All Writs Act provides no basis for enjoining the Oklahoma Action.

## CONCLUSION

For the reasons set forth above, there is no valid basis for this Court to exceed its statutory power and enjoin the Oklahoma Action. Accordingly, the Court should summarily dismiss the Debtors' claims against Exxon.

Dated: September 20, 2001

GREENBERG TRAURIG, LLP

Scott D. Cousins (No. 3079)
William E. Chipman Jr. (No. 3818)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, Delaware 19801
(302) 661-7000

— and —

Adam D. Cole
GREENBERG TRAURIG, LLP
885 Third Avenue
New York, New York 10022
(212) 801-2100

Attorneys for
*ExxonMobil Corporation*