IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |
| W. R. GRACE & CO., *et al.*, | ) | |
| | ) | |
| Plaintiffs. | ) | |
| | ) | Adversary No. A-01-771 |
| -against- | ) | |
| | ) | Re: Docket Nos. 398, 413, 414 and 417 |
| MARGARET CHAKARIAN, *et al.*; | ) | Hearing Date: May 2, 2007 at 2:00 p.m. |
| AND JOHN DOES 1-1000, | ) | Agenda Item 8 |
| | ) | |
| Defendants. | ) | |

**DEBTORS' REPLY IN SUPPORT OF THEIR MOTION TO EXPAND THE PRELIMINARY INJUNCTION TO INCLUDE ACTIONS AGAINST BNSF**

At the outset of these chapter 11 cases, the Court found that it had jurisdiction to enter an order enjoining actions against third parties that arose out of alleged exposures associated with the Debtors' former vermiculite mining operations in Libby, Montana.[1] On two subsequent occasions, the Court clarified or expanded the Injunction to cover actions brought by the Montana plaintiffs[2] against Maryland Casualty Company and then Montana Vermiculite Company.[3] Attempting yet another "end run" around the Debtors' automatic stay, the Montana plaintiffs now pursue BNSF. At a minimum, for the very same reasons that this Court enjoined

---

[1] See Case No. 01-ap-00771-JKF at Docket Nos. 6 and 36. Hereinafter, all references to a docket number shall refer to this adversary proceeding unless otherwise specified.

[2] Capitalized terms not defined herein have the same meaning ascribed in the Debtors' Motion (Docket No. 398).

[3] The Debtors acknowledge that recently the Court denied a third similar request involving the State of Montana (see Docket Nos. 419 and 420 (the "Montana Opinion")). For the reasons stated herein, that situation is distinguishable. However, the Debtors believe that this Court should have also enjoined those actions against the State. The Debtors' position in that regard will be addressed in a Motion to Alter and Amend which the Debtors intend to file shortly.

the actions being brought against MCC and MVC, and the Third Circuit affirmed the MCC decision, this Court should enjoin the Montana Actions being brought against BNSF.

Further, the circumstances involving BNSF present compelling additional reasons to expand the Preliminary Injunction. In addition to the Debtors' valid concerns of record taint and collateral estoppel, in the present case, there is not one, but *four* distinct avenues by which the Debtors' estates may be directly impacted by the Montana Actions filed against BNSF. Thus, as detailed below, the Third Circuit test for "related to" jurisdiction is satisfied, the Oppositions[4] should be overruled, and the Court should grant the Debtors' request to expand the Preliminary Injunction to enjoin the Montana Actions from being pursued against BNSF.

## This Court Has Subject Matter Jurisdiction.

Subject matter jurisdiction exists for the Court to enjoin the Montana Actions being brought by the Montana plaintiffs against BNSF. The Third Circuit in Gerard[5] held that the Court had "related to" jurisdiction under 28 U.S.C. § 1334(b) to enter the Preliminary Injunction, enjoining actions brought by the Montana plaintiffs against MCC allegedly based on MCC's independent liability.[6] In so holding, the Third Circuit distinguished both Pacor and Federal-Mogul,[7] stating the issue presented in each of those cases was "whether the Bankruptcy Court had jurisdiction to remove *to* the Bankruptcy Court, and thus hear and decide, in the Bankruptcy Court, litigation pending in state court."[8] (emphasis in original) Here, as in Gerard, the issue is not whether this Court should exercise jurisdiction over the Montana Actions pending elsewhere,

---

[4] Oppositions were filed by the Libby Claimants, the PI Committee and BNSF (collectively, the "Oppositions").
[5] Gerard v. W. R. Grace & Co., 115 Fed. Appx. 565 (3d Cir. 2004).
[6] The fact that the Third Circuit Opinion is marked as "Not precedential" does not make it any less relevant or controlling in this case. According to the Third Circuit's Internal Operating Procedure 5.3, an opinion marked as "not precedential" is so designated because it "appears to have value only to the trial court or the parties. . ." In this case, we are dealing with the very same parties and the very same trial court and the opinion is of great value and relevance.
[7] Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984) and In re Federal-Mogul Global, Inc., 282 B.R. 301, 310-11 (D. Del.), *mandamus denied*, 300 F.3d 368 (3d Cir. 2002).
[8] Gerard, 115 Fed. Appx. at 567.

2

but whether this Court should modify the Injunction already issued by *this Court* to include the Montana Actions against BNSF because they are related to the Debtors' chapter 11 cases. Unlike the Court in Pacor and Federal Mogul, as the Gerard Court stated, this request is made by the "debtor in its own chapter 11 case."[9] And, the Third Circuit in Gerard necessarily ratified this Court's finding that the *prospect* of indemnification by the Debtors made expansion of the Injunction to MCC appropriate.[10]

In the MCC and MVC matters, the Debtors argued that, if the underlying suits against these parties were allowed to proceed, there was a danger that evidence and testimony from the suits would be used to the Debtors' detriment in future proceedings against the Debtors. Additionally, of course, the Debtors filed these chapter 11 cases in order to attempt to address their potential liability for asbestos related matters in one proceeding. Permitting actions that clearly involve the Debtors' vermiculite to proceed against third parties like MCC, MVC, and now BNSF, outside of the chapter 11 cases, would defeat the very purpose of filing chapter 11 in the first instance.

The Debtors should not be put in the position of having to participate in the Montana Actions. Such an involvement would be extensive and would inevitably slow down and delay administration of the chapter 11 cases. Moreover, the Debtors' estates would directly be impacted in violation of the protections afforded the Debtors under the Bankruptcy Code. This Court decided that a judgment against either MCC or MVC could trigger the Debtors' indemnity obligations under their settlement agreements with the Insurers -- MCC and Royal respectively -- and based in part on this *potential* impact on the Debtors' estates found subject matter jurisdiction existed. The Third Circuit agreed.

---

[9] Id. at 567.
[10] Id. at 568-69.

3

The Debtors acknowledge that this Court, in its recent Montana Opinion, denied the Debtors' request to expand the Injunction to include actions against the State of Montana. In denying the requested relief, the Court in the Montana Opinion did not address the Third Circuit's decision in the Gerard case. The court briefly mentioned MCC, stating that MCC was a workers' compensation insurer for the Debtors, and a ruling against MCC "would have a direct impact on the estate." Montana Opinion at p.10. However, what the Court failed to take into account is that in the MCC matter, the Montana plaintiffs were not seeking to pursue MCC as the Debtors' insurer. Instead, they were seeking to pursue MCC for its own independent actions. The Debtors argued that the potential for "record taint" still compelled entry of the injunction even if their insurance with MCC was not implicated. The Third Circuit agreed and affirmed *this* Court's entry of the Injunction of the actions against MCC.

The Debtors face exactly the same circumstances with BNSF that previously justified expanding the Preliminary Injunction for MCC. The Montana plaintiffs are alleging that BNSF had an independent duty to the Montana plaintiffs for injuries they have allegedly sustained out of alleged exposures associated with the Debtors' former vermiculite mining operations in Libby, Montana. For the very same reasons that the Court enjoined those actions against MCC, it should enjoin the actions against BNSF. Further, in the present case, there are several additional considerations that dictate the expansion of the Preliminary Injunction.

BNSF has claimed both contractual and common law indemnity rights against the Debtors. BNSF has also asserted that it either shares insurance with the Debtors or has separate insurance paid for by the Debtors' predecessors. While the Debtors do not acknowledge liability to BNSF under any of these circumstances, the Court does not have to decide these issues at this time. The very existence of these potential avenues bolsters the clear jurisdiction that already

4

exists, as recognized by the Third Circuit in the MCC matter, to expand the Preliminary Injunction.

Briefly, these additional avenues to the Debtors, as alleged by BNSF, and their relevance, are described as follows:

- Contractual Indemnification

    - contractual indemnification rights against the Debtors claimed pursuant to 15 different agreements;[11]

    - agreements contain indemnities for actions including BNSF's own negligence; and

    - the existence of contractual indemnification rights was one of the reasons the Court found jurisdiction to enjoin the actions against MCC and MVC.[12] Pacor, Federal Mogul, and several cases since then have found contractual indemnification sufficient to confer subject matter jurisdiction.[13]

- The Insurance Indemnities

    - alleged entitlement to defense and indemnification from the Insurers under certain policies (i) which were settled by the Debtors,[14] (ii) under which the Debtors agreed to indemnify and hold the Insurers harmless from any suits, and (iii) where BNSF claims it is a named insured;

    - this Court has found that a claim against MCC or MVC would have impacted the Debtors' estates due to similar insurance indemnity agreements;[15]

---

[11] The Debtors were only provided by BNSF with copies of 12 of these 15 agreements and have not been able to locate the missing 3. BNSF also provided an index specifically calling out the relevant indemnification provisions in these 15 agreements. Copies of the Index and the 12 agreements are attached hereto as **Exhibit A**. The Montana plaintiff's Motion in Limine (Docket No. 418) should be overruled as moot to the extent that the Debtors have attached copies of the relevant agreements in their possession as **Exhibit A** hereto.

[12] W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.), 315 B.R. 353, 359 (Bankr. D. Del. 2004).

[13] In Pacor, the Third Circuit found that the bankruptcy court lacked "related to" jurisdiction but distinguished the case before it from one in which there was a contractual indemnification right. The Third Circuit implied in Pacor that a contractual indemnification was sufficient to confer subject matter jurisdiction. Id. at 995. This interpretation was upheld in Federal Mogul, 282 B.R. at 310-11, and several cases since then. See, e.g., A.H. Robins Co., 788 F.2d 994, 1001-01 (4th Cir. 1986).

[14] The Debtors have previously provided Robert Horkovich, insurance counsel for the Asbestos claimants, with copies of all of the Debtors' settled insurance policies. The Montana plaintiffs' Motion in Limine should be overruled to the extent that the Debtors already have provided all relevant insurance information in their possession.

[15] The Court stated "if there is a judgment against MVC which resulted in damages..., the Montana Plaintiffs would look to Royal with respect to the insurance policies and the Debtors' indemnity obligations under their settlement agreement with Royal would be triggered." In re W.R. Grace & Co., 315 B.R. at 359.

5

- Insurers have asserted that even if BNSF may not prevail in pursuing a claim against the Insurers under any of the settled policies, as long as BNSF *makes a demand* on the Insurers to defend under one of those policies, the terms of the settlement agreements require that the Debtors assume that defense or indemnify the Insurers for any costs associated with such defense; and

- this Court has twice before found that it had subject matter jurisdiction to expand the Preliminary Injunction to protect the Debtors in similarly situated circumstances. The BNSF facts are no different. Indeed, BNSF has already (i) sent demand letters to the Insurers, who have in turn sent demand letters to the Debtors, and (ii) made discovery demands on the Insurers.

- <u>Separate Insurance paid for by the Debtors</u>

    - Insurers have also asserted that, even if the Debtors and BNSF do not share the same insurance, the Debtors' estates are nonetheless impacted since any separate insurance policies issued by the Insurers were purchased by the Debtors' predecessors pursuant to an indemnity agreement between the Debtors' predecessors and BNSF.[16]

- <u>Common Law Indemnification</u>

    - common law indemnification right asserted against the Debtors under Montana state law; and

    - in <u>Gerard</u>, the Third Circuit specifically rejected the argument that there would need to be an absolute indemnity obligation by the Debtors' estates for the Bankruptcy Court to have jurisdiction to expand the Preliminary Injunction, instead focusing on the *prospect* of indemnification by the Debtors.

As a result, in the present case, in addition to the significant concerns about record taint and collateral estoppel discussed in more detail below, there appear to be at least four separate ways in which the Debtors' estates could be directly affected if the Montana plaintiffs are permitted to continue their pursuit of BNSF. For these reasons, "related to" jurisdiction under 28 U.S.C. 1334(b) exists, permitting this Court to enjoin the actions being brought by the Montana plaintiffs against BNSF.

---

[16] Although the Debtors have been provided by BNSF with correspondence referencing the existence of such separate policies, the Debtors have not been able to locate any such policies themselves.

## **There Is A Strong Likelihood Of Record Taint**

The potential for record taint is a very serious justification for expanding the Injunction to include BNSF. The Montana Actions against BNSF include the same claimants, many of the same causes of action, and the same evidence that will be at issue as the Montana plaintiffs press their claims against the Debtors. The Montana plaintiffs' allegation that no further record taint is possible because the record is fully developed in Montana lacks merit. In fact, no cases have been tried to date in Montana against BNSF. And, since the Debtors were last active participants in litigation in Montana, significant new information has been developed that casts serious doubt on much of the prior relied-upon evidence.

Specifically, over the last several years, evidence has been developed that calls into question testing and evidence presented in past cases by the Montana plaintiffs. The Debtors have unearthed new proof with respect to many individual claimants and their doctors, which casts doubt on their medical evidence. New scientific testing and studies have uncovered relevant information that has not been previously litigated. Finally, the overwhelming number of new, alleged asbestos claimants raises the question of the legitimacy of many of their claims. These very issues are at the center of the controversy in the Debtors' estimation of claims emanating from Libby. These issues should not be litigated by BNSF outside the presence of the Debtors and this Court.

Furthermore, the Third Circuit has already rejected the Montana plaintiffs' theory that collateral estoppel and record taint were not legitimate concerns for the Debtors in granting the Preliminary Injunction. Specifically, the Third Circuit commented as follows:

> Plaintiffs' counsel's theory that under a principal/agent analysis the absence of Grace would protect it from collateral estoppel should not be tested, at Grace's peril. . . .

Furthermore, the courts have never adopted the absence of collateral estoppel as the test for preventing actions from proceeding against third parties when the debtor is protected by the automatic stay. Rather, courts employ a broader view of the potential impact on the debtor. The standard for the grant of a stay is generally whether the litigation "could interfere with the reorganization of the debtor," *In re A.H. Robins Co.*, 828 F.2d 1023, 1025 (4th Cir.1987) or "would interfere with, deplete or adversely affect property of [the] estates or which would frustrate the statutory scheme of chapter 11 or diminish [the debtor's] ability to formulate a plan of reorganization," *In re Johns-Manville*, 26 B.R. 420, 436 (Bankr. S.D.N.Y. 1983).

Gerard, 115 Fed. Appx. at 569-70.[17]

If the Montana plaintiffs are allowed to proceed with the Montana Actions against BNSF, there is a real danger that evidence and testimony from those Montana Actions will be used in future proceedings to the Debtors' detriment. The Debtors should not be forced now to participate in the Montana Actions to prevent such adverse consequences. The Montana Actions against BNSF should be enjoined.

### The Debtors meet the Requirements for an Injunction.

In their Oppositions, the Montana plaintiffs and the PI Committee state: (i) the Debtors ignore and cannot satisfy the traditional requirements for an injunction, and (ii) that issuance of an injunction is prohibited by the Third Circuit's opinion in Combustion Engineering. They are clearly wrong on both counts.

    1.    The Debtors need not meet the Four-Factor Test for Expansion of the Preliminary Injunction.

Both of the Oppositions cite only one case -- a first amendment opinion -- for the proposition that the Debtors need to meet the four-factor test for the granting of a preliminary

---

[17] The cases cited in the Oppositions for the proposition that Montana law fully protects the Debtors from any record taint do not stand for the proposition asserted. In Faulconbridge v. State, the Court, citing to Plumb, states that "conduct of an unnamed third party is *generally* not admissible to apportion liability. 142 P.3d 777, 792 (Mont. 2006) (citing Plumb v. Fourth Judicial Dist.Court, 927 P.2d 1011 (Mont. 1996)) (emphasis added). The Montana court certainly does not preclude the possibility. Indeed, the Court concludes that a party may introduce non-party conduct for the purpose of demonstrating that the non-party conduct was a superseding intervening cause of the plaintiff's damages. Id. at 792. And, any review of Section 27-1-703 of the Montana Code cited in the Oppositions would show that the case law is inconsistent, ever changing, and confusing at best with respect to the issues of record taint and contribution claims. Plumb, 927 P.2d at 1016-1018.

8

injunction.[18] The case that they have cited, however, does not involve Chapter 11 debtors and is not relevant to this matter.

In the Debtors' Motion, the Debtors assert that this Court has the authority to expand the Preliminary Injunction if (a) the nondebtor and debtor share an identity of interest such that a suit against the nondebtor is essentially a suit against the debtor and (b) the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization. This is the same standard that the Debtors' successfully argued was applicable in the past when this Court expanded the Preliminary Injunction to include MVC.[19] This is the same standard the Third Circuit implies is applicable in Gerard.[20] This is the same standard that other bankruptcy courts have found applicable.[21]

### 2. The Libby Claimants Misinterpret Combustion Engineering

The Oppositions are replete with references to the Third Circuit's opinion in Combustion Engineering. However, the reliance on the case is misplaced. The case involved the issuance of a *channeling injunction* for non-debtors under section 105 in conjunction with confirmation of a chapter 11 plan that also contained a channeling injunction under section 524(g) -- relief far beyond that which the Debtors have requested. Furthermore, a careful reading of the case shows that the Third Circuit refused to find "related to" jurisdiction over non-debtors because the liabilities at issue were *not derivative* of the debtor's liability.

---

[18] The Pitt News v. Fisher, 215 F.3d 354 (3d Cir. 2000).
[19] See Docket No. 153.
[20] "The standard for the grant of a stay is generally whether the litigation 'could interfere with the reorganization of the debtor,' or 'would interfere with, deplete or adversely affect property of [the] estates or which would frustrate the statutory scheme of chapter 11 or diminish [the debtor's] ability to formulate a plan of reorganization.' Gerard, 115 Fed. Appx. at 569-70 (citations omitted). These factors are almost identical to the two factors set forth by the Debtors.
[21] See, e.g., In re Chateaugay Corp., 201 B.R. 48, 71 (Bankr. S.D.N.Y. 1996) (the bankruptcy court may 'enjoin proceedings in other courts when it is satisfied that such a proceeding would defeat or impair its jurisdiction with respect to a case before it.').

9

A channeling injunction is an extraordinary remedy provided for in the Bankruptcy Code which permanently enjoins third parties from asserting claims against the Debtors and other protected parties. In Combustion Engineering, the Third Circuit found that the Debtors attempted to broaden the injunctive relief beyond that permitted under section 524(g) by providing similar relief to certain non-debtors under section 105. Here, the Debtors are not asking for a channeling injunction under sections 524(g) or 105. They simply seek to enjoin preliminarily actions from being pursued during their chapter 11 cases against non-debtor affiliates and certain third parties "arising from alleged exposure to asbestos indirectly or directly caused by the Debtors."

In addition, the Montana plaintiffs confuse the issue of independent claims against BNSF and non-derivative liability. They rely on the Montana Supreme Court opinion in Orr v. State of Montana, 106 P.3d 100 (Mont. 2004), finding the State of Montana had an independent duty to warn the miners of the known hazards of working in the Libby mine, and attempt to shoe-horn it into the reasoning in the Combustion Engineering case. However, the Third Circuit in Combustion Engineering repeatedly frames the issue, and its holding, as centering around the *non-derivative* liability of non-debtors.[22] In Combustion Engineering, the non-debtors had their *own* asbestos liabilities, each arising from different products, involving different asbestos-containing materials, sold to different markets. In the present instance, BNSF's liability, while potentially based on an independent cause of action against BNSF, is entirely derivative of the

---

[22] In re Combustion Engineering, Inc., 391 F.3d at 202, 210, 224. Debtors acknowledge that the Third Circuit states that one of the issues on appeal is whether "the Bankruptcy Court [has] 'related to' jurisdiction *over the derivative and non-derivative claims* against the non-debtors. . ."Id. at 202 (emphasis added). However, in reviewing the Bankruptcy Court opinion, the Third Circuit then states that "the Bankruptcy Court determined it was appropriate to enjoin the independent, *non-derivative* claims against [the non-debtors] under § 105(a)." Id. at 210 (emphasis added). At another point, it again frames the issue as one centering around non-derivative liability when it states "At issue is whether the District Court properly exercised 'related to' jurisdiction over the *non-derivative asbestos claims* against non-debtors." Id. at 234 (emphasis added).

Debtors' operations. It is as a result of the Debtors' and only the Debtors' vermiculite operations in Libby, Montana. Therefore, the <u>Combustion Engineering</u> opinion is inapplicable.

## Conclusion

Wherefore, for the aforementioned reasons, the Debtors respectfully request that this Court overrule the Oppositions and expand the Preliminary Injunction to include the Montana Actions and all similar actions brought against BNSF that arise from alleged exposure to vermiculite ore emanating from the Debtors' former vermiculite mining operations in Libby, Montana.

Dated: April 24, 2007

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Lori Sinanyan
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES
& WEINTRAUB LLP

*/s/ James E. O'Neill*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for Debtors and Debtors in Possession